### Lessee of STEPHEN DUNCAN *against* JOHN ROBESON.

Sheriffs deed of lands, may be read in evidence, though acknowledged after ejectment brought.

An inquisition is not necessary previous to the sale of unimproved lands levied on.

Parol evidence may be received to designate the claim of another, called for in a location, but not to set up an independent right to lands claimed under a military permit, not produced and where an office right has not been taken out in a reasonable time afterwards.

EJECTMENT for one messuage and 192$\frac{4}{8}$ acres in Donegal township.

The plaintiff claimed the premises under a sale from David Hoge, esq., sheriff of Cumberland county, made in October 1771, and levied on as the property of George Kline, the same being then woodland and wholly unimproved ; but no deed was then executed. On the 21st January 1772, the sheriffalty of Hoge being expired, a petition was filed in the Court of Common Pleas of that county, that Ephraim Blaine, esq., the then sheriff, should execute the deed, which was granted ; and a conveyance was made by him accordingly on the 25th of the same month, but not acknowledged in open court until the 6th April 1799, four years after the commencement of this ejectment.

It did not appear, that an inquisition had been taken, condemning the lands, previous to the sale.

The title of Kline rested on an application, dated 13th June 1769, for 300 acres on the south branch of the Four Miles Run, adjoining a claim of Philip Arskin, in Cumberland county, and a survey made thereon on the 2d May 1770, which had not been returned by the deputy surveyor, into the surveyor general's office.

The defendant held under a warrant to James Guffey, dated 3d February 1785, for 300 acres including an improvement on the waters of the Four Miles Run, joining land of William

Campbell on the east, along a dividing ridge between the waters of the said run and Loyah-nnah creek, whereon interest was to commence from the 1st March 1768. A survey of 293 acres and 27 perches was made hereon on the 4th October 1785, and a patent grounded thereon, issued on the 2d October 1788. Guffey wrote a letter to Duncan on 18th August 1788, mentioning that " his right was first an officer's grant, the year after the purchase, and an improvement shortly after." He desired to know the right of Duncan ; if it was the better title, he would purchase from him. To this letter he received an answer before he took out his patent.

The defendant's counsel objected to the reading of the sheriff's deed the same not being acknowledged until after bringing of this suit, but the court overruled it.

The deed does not take effect from its acknowledgment, but from its sealing and delivery. Every thing relates herein to the first act but the acknowledgment thereof being made at a late day, the defendant is at liberty to go into every objection against the sale, which might have been made, if the deed was now offered for acknowledgment, as in common cases. The deed must be read.

An exception was then taken to the proceedings, for want of an inquisition, which it was insisted was necessary, under the act of assembly of 4th *Annæ*.

*Sed per curiam.* This part of the act cannot possibly relate to unimproved lands. What yearly rents or profits can mere woodlands yield ? In Duncan's lessee v. Lawrance, it was ruled on argument in Cumberland county, by the judges, at May assizes 1769, that the want of an inquisition on a vacant lot in Carlisle, did not vitiate the sale by the sheriff ; and the same resolution also took place in this county in Johnston's lessee v. Lochrey.

The defendant's counsel, in the course of the trial, offered to examine witnesses to prove the improvements made by Arskin. The terms of the application of Kline are binding on him and all claiming under him. Arskin's pretentions included part of the lands in question ; he held under an officer's permit, and sold to Philemon Waters, who on the 9th October 1783, conveyed to James Cuffey.

By the court. The defendant certainly may give evidence of Arskin's improvements in June 1769, in order to designate his claim, called for by the plaintiff's location, but not thereby to build up an

adverse independent right under a supposed military premission af-
ter the Indian purchase, and which has not been pursued by an
office right from 1769 until 1785. Such great laches would amount
to an abandonment. It has always been held, that to secure rights,
under commanding officers' grants to the westward, or mere improve-
ments, before the treaty at Fort Stanwix, on the 4th November 1768,
office rights should be applied for in a reasonable time. But where is
this military permit? Let it be shown, if it exists; if its former ex-
istence can be ascertained, and it is lost, let its contents be proved by
witnesses who have seen it. Was it before or after the date of Kline's
application, the construction whereof must be governed by the previous
claim of Arskin?

Verdict *pro quer.*

Mr. Woods, *pro quer.*

Messrs. J. Ross and Young, *pro def.*