Verdict <em>pro quer.</em>

Mr. Woods, *pro quer.*
Messrs. J. Ross and Young, *pro def.*

---

### Lessee of SAMUEL MOORHEAD *against* JOSEPH PEARCE.

The proof of the existence of a writ of *venditioni exponas*, on which the sheriff has sold
lands, may be supplied by circumstances.
A sheriff's deed not acknowledged in court, may after a great lapse of time and no objec-
tion made to it by the debtor, be received in evidence; but it is subject to every excep-
tion which may be made on its being tendered for acknowledgment. The law of
1700, that the home-seat of a debtor shall not be sold till a year after judgment, is
now obsolete and not practiced under.

EJECTMENT for one messuage and 100 acres of land in Solem township.
The plaintiff claimed under a deed from John Carnaghan, esquire,
sheriff, dated 6th February 1776, proved by the oath of William Loch-
rey, one of the subscribing witnesses, on the 12th March 1794, and
recorded on the 17th of the same month, but it was not acknowledged
in court. Michael Hoofnagle, the deputy prothonotary, drew the sheriff's
deed, and was the other subscribing witness, but did not attend the trial.

This deed recited a judgment obtained by James Hamilton against
Daniel M'Manamy, on the 3d January 1775; a *fi. fa.* thereon, return-
able January term 1775, on which a levy was made of the lands in
question, as M'Manamy's property; an inquisition found at the house
of Robert Hannah, on the 10th January 1776, condemning the lands;
a *venditioni exponas*, tested 6th April, 15 Geo. 3, returnable July
term 1775; an alias *venditioni*, tested 2d July, 15 Geo. 3, returnable
October term 1775; and a *pluries venditioni*, tested 12th October,
15 Geo. 3, returnable January term 1776, and a sale thereon on the
10th January 1776, to Moorhead, for 57*l.* 10*s.* The receipt for the
money was subscribed in the presence of Samuel Peoples, another wit-
ness.

The judgment, *fi. fa.* and alias *venditioni*, were shown in evidence and the sums and different dates accurately corresponded with those mentioned in the deed; and it was proved that the first *venditioni* and *pluries venditioni* could not be found in the office, nor the execution docket of January term 1776, although diligent search had been made for them. It was admitted that many of the public papers had been lost and destroyed, owing to the war ; the burning of Hannahstown, where the office was kept, and the frequent removal of them by a change of prothonotaries, during the war. Carnaghan removed to Kentucky in 1787, and Moorehead was in possession of part of the premises conveyed to him.

Daniel M'Manamy formerly held the lands under a warrant to him for 100 acres, adjoining the lands of John Shields and Lawrence Irwin, at the mouth of a small creek running into Loyalhannah, dated 10th June 1772, and a survey thereon of 171 acres 51 perches, made on the 4th August 1772, both of which were shown in evidence.

The defendant's counsel excepted to the reading of the sheriff's deed, unless the *pluries venditioni*, whereon it was grounded, was produced. Unless this writ be shown, or its existence be proved, the the sale is unauthorized. The limitation act, § 7, passed 26th March 1785, 2 Dall. St. Laws, 283. provides for the validity of sheriff's deeds made therefore *bona fide* and for a valuable consideration, where there has been quiet and peaceable possession for six years, though the writs of *fieri facias* and *venditioni exponas* are not produced in court, which clearly evinces the necessity of such production, where the conveyances have not been accompanied with such possession.

Moreover, the sheriff's deed is evidently defective, by reason of its not being acknowledgd in court, as the law requires. Act of 4 Annæ 1705, § 4. 1 Dall. St. Laws, 69. The home-seat also of a debtor shall not be exposed to sale, before the expiration of one year after judgment is obtained. *Ib.* 12.

By the court. The objection respecting the home-seat does not apply here ; the land were not sold till the 10th January 1776, and the judgment was entered on the 3d January 1775. But this part of the law has long been deemed obsolete, and has not been pursued.

Undoubtedly a *venditioni* must issue to sell lands by a sheriff. Impossible proof, however is expected from no man. Whether a *pluries venditioni* issued in this case, or not, must be left to the jury's determination, as a matter of fact. It will be their duty to take into con-

sideration the effects of a revolutionary and Indian war on a frontier village, the burning of the town where the records were kept, the fre quent removal and loss of the public papers, the deed drawn in the prothonotary's office, reciting with precision the different executions which have issued, with their tests and return days, which as far as they are now capable of examination, appear to be correct through- out; the improbability of an old sheriff's selling lands without a writ impowering him so to do, and the debtor's making no objection against the sale ; on all these circumstances, they can form a judgment satis- factory to their own consciences.    It may be added too, that the les- sor of the plaintiff has been in quiet and peaceable possession of the lands in part, above twenty years, and that the adverse possession of the residue is not held under M'Manamy, the original debtor.    (Vid. Aleyn 18.)

As to the want of an early acknowledgment of a sheriff's deed, we determined yesterday, in the case of Duncan's lessee v. Robeson that it derives its validity from its execution, and that the first act is re- spected in law.    The act of 1705, *Ib.* 12, directs "that the sheriff shall give the buyer a deed duly executed and acknowledged in court, for what is sold, as has heretofore been used upon the sheriff's sale of lands."    Most probably some practice of this kind had obtained in early times, on the sheriff's selling the lands of debtors, which was unknown to the rules of the common law ; for on the best examina- tion we have been able to make, we cannot find any previous law en- joining that ceremony.    The usage of acknowledging sheriff's deeds of lands, in the term succeeding the sales, is certainly attended with many conveniences, and ought to be followed ; it gives debtors and credi- tors an opportunity of making their complaints on a day certain, which are soon heard and determined, and much time and great expense are saved thereby.    The words of the act however, are only directory, and do not invalidate a sheriff's deed for want of an acknowledgment in court.    Such an acknowledgment does not appear to be indispensibly necessary in all given cases.    Suppose a sheriff to execute the deed and receive the money on one day, and die or become incapable of acknowl- edging it afterwards, it would be hard to say that the deed was defect- ive on that account, and that a new sale must be had.    On the whole, we think that the present deed may be supported, without the usual ac- knowledgment, after so great a lapse of time, and no objection made to it by the debtor ; but in its operation, it is subject to every excep- tion which may be had against a sheriff's deed on its acknowledgment being tendered in court.

The defendant held under an application in the name of Love-

day Allen, for 300 acres on Loyalhannah or Ligonier creek, to begin at the upper part of a place known by the name of the Crab-tree Bottom, and to extend down the creek, in Cumberland county, dated 3d April 1769, and under antoher application of the same date, adjoining to the former, in the nam of Elizabeth Harrison Hall, and surveys made thereon; but it clearly appearing that those locations were intended for lands at the distance of nine miles from Fort Ligonier, the jury without hesitation found a verdict for the plaintiff.

Messrs. Brackenridge and Young, *pro quer.*

Messrs. Woods and Armstrong, *pro def.*