# Burns *versus* Clarion County.

1. The division of the state into counties, townships, cities, &c., originating in the necessities and convenience of the people, does not withdraw them from supervision and control by the state in matters of internal government.

2. Nothing in the constitution forbids the interference of the legislature with the accounting officer of a county so far as regards the mode to be pursued in settling and what shall be final in the settlement of public accounts.

3. A settlement by county auditors of a treasurer's accounts does not stand on the footing of a judicial decision.

4. County auditors act ministerially, and the finality of their action rests on positive enactment, and is not inherent, like judicial action.

5. The legislature cannot assume judicial functions.

6. County auditors charged a treasurer with tax lost by a defaulting collector; the treasurer did not appeal and paid the money. An Act of Assembly required the auditors to open the settlement "and resettle and equitably adjust the same." Both the auditors, and the court on appeal, were bound to act upon the equities of the treasurer as intended by the act, and not on strict legal principles.

7. The Act of Assembly impliedly directed that the rule of law as to voluntary payments should be waived.

October 20th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Clarion county*: No. 191, to October and November Term 1869.

James T. Burns was treasurer of the county of Clarion for the year 1861. The Act of April 3d 1851, Pamph. L. 317, relating to the collection of taxes in Venango county, is extended by the

[Burns v. Clarion County.]

Act of May 4th 1852, Pamph. L. 568, to Clarion county. By the 2d section of the first act it is made the duty of the county treasurer to give thirty days' notice of a time previous to the 1st day of August in each year when he would attend at places designated in the notice to receive the taxes of the respective boroughs and townships. By the 3d and 4th sections of the act it is provided that if any taxes remain unpaid for thirty days after the 1st of August, the treasurer shall issue his warrant with a schedule of unpaid taxes, and upon his delivering the same to the constable of any township, he shall charge the constable with the amount, from which the constable and his sureties shall be discharged only on paying such amount after deducting exonerations, &c. By the 5th section, the Court of Quarter Sessions before appointing constables shall take from them a bond to the Commonwealth in such sum and with such sureties as the court shall approve, conditioned for the faithful discharge of their duties under the act, and for the payment to the county treasurer of the amount of taxes contained in any warrant and schedule delivered to them, after deducting exonerations, &c. On the 6th of May 1861, W. W. McClelland was appointed constable of Porter township, and entered into bond in the sum of $500 with Elisha McClelland and Jarius Thompson as his sureties, the amount of the bond and the sureties having been approved by the court. The amount of the duplicate of Porter township delivered to Burns was $1889.99; having collected some part of it, he put a warrant and schedule of the balance into the hands of McClelland, the constable, on the 2d of September 1861. McClelland accounted to Burns by payments and exonerations for this balance except $651.69. On the settlement of Burns's accounts by the auditors in January 1862, a balance of $9881.84 including the $651.69 of the Porter township duplicate was reported to be in his hands. He paid the whole amount to his successor in office.

On the 8th of April 1864 (Pamph. L. 323), this act was passed, viz. : " That the auditors of Clarion county are hereby authorized and required to open the accounts of James T. Burns, former treasurer of Clarion county, and with the approval of the county commissioners resettle and equitably readjust the same, allowing the same right of appeal to the court that is provided for by law in the settlement of treasurers' accounts."

In pursuance of this act the auditors opened Burns's account, and made the following report :—

" And now, to wit, January 4th 1865. In pursuance with an Act of General Assembly, passed the 8th day of April, Anno Domini 1864, entitled ' An act for the relief of James T. Burns, Esq., former treasurer of Clarion county.' We, the undersigned auditors of Clarion county, proceeded to open the accounts of the said Burns with the county of Clarion for the years 1860 and

1861, and having duly considered and heard Mr. Burns's statement, have concluded not to make any alterations in said account, and hereby leave the report the same as made by former auditors."

The county commissioners on the same day approved the report; and Burns appealed from the report on the 11th of February 1865. On the appeal the court ordered an issue in which the county of Clarion was plaintiff, and Burns defendant, the auditor's report to stand for a declaration, and the defendant "under the plea of payment to give all matters in defence in evidence or matter entitling him to a balance in his favor."

On the trial before Campbell, P. J., the plaintiff gave in evidence the report of the auditors in 1862, that the defendant did not then claim any credit on account of the Porter township duplicate, and that he paid the whole balance to his successor; that when he paid it he said part was his own money; at one time he paid about $500, saying that he paid it because he wanted to get rid of the debt; that the money was in the hands of McClelland and some others at that time.

Burns gave evidence of the amount of duplicate which went into McClelland's hands; he also gave evidence tending to show the insolvency of McClelland and his sureties. The plaintiff in rebuttal gave evidence that no suit had been brought against McClelland or his sureties.

The plaintiff asked the court to charge:—

"That if James T. Burns settled his account on the 15th of January 1862 with the auditors of Clarion county without objection, and afterwards paid the balance at said settlement to his successor (although he may have paid with his own funds), he cannot now recover any part of such money so paid back; that a party paying money voluntarily to another under a claim of right cannot recover the same back."

The court said:—

"We answer the plaintiff's point in the affirmative and as that controls the case, we instruct you to find a verdict for the plaintiff."

The jury found for the plaintiff. The defendant on a writ of error assigned the instruction of the court for error.

*W. P. Jenks* (with whom were *T. S. Wilson* and *G. W. Lathy*), for plaintiff in error.

*W. L. Corbett* (with whom was *J. T. Hindman*), for defendant in error.—Money paid voluntarily cannot be recovered back: Hospital *v*. Philadelphia, 12 Harris 229; Brown *v*. McKinally, 1 Esp. R. 279; Beach *v*. Vandenburgh, 10 Johns. R. 361; Overseers of Mamakating, 14 Id. 87. The duties of county auditors are judicial: Northampton *v*. Yohe, 12 Harris 307. Permitting

[Burns v. Clarion County.]

the report of 1862 to pass without appeal, and paying the balance, is conclusive, and vests a right with which the legislature should not interfere: Ervine's Appeal, 4 Harris 266. It has no judicial power to open a judgment: Baggs's Appeal, 7 Wright 512; DeChastellux v. Fairchild, 3 Harris 18.

The opinion of the court was delivered, November 1st 1869, by

THOMPSON, C. J.—The civil and geographical divisions of the state into counties, townships and cities, &c., had its origin in the necessities and convenience of the people; but this does not withdraw these municipal divisions from supervision and control by the state in matters of internal government. The legislature often exercises the right to exempt property liable to taxation, and in other instances increases the liability to taxation. It changes county sites, and orders roads to be opened and bridges to be built at the expense of the counties. No one disputes the exercise of such powers by the legislature. There is nothing in the constitution which expressly or impliedly forbids such interference; nor anything which forbids its interference with the accounting officers of a county, so far as to the mode and manner to be pursued in settling, and what shall constitute a finality in the settlement of public accounts. We have, therefore, no hesitation in holding that the Act of Assembly of the 8th April 1864, "for the relief of James T. Burns, late treasurer of Clarion county," directing the opening and resettlement of his accounts, by the county auditors, on equitable grounds, is entirely within the power of the legislature.

The idea advanced that their former settlement is to be regarded as a decision standing on the footing of a judicial decision, is an entire mistake. The auditors are not judicial officers in any sense. They act ministerially, and the finality of their action rests on positive enactment, and is not inherent, like judicial action. The legislature cannot, it is true, assume the functions of the judiciary. That is settled in many cases, amongst which are De Chastellux v. Fairchild, 12 Harris 18, and Baggs's Appeal, 7 Wright 512, and other later cases to the same effect. The plain reason is that the legislature possess no ordinary judicial powers any more than does the judiciary possess legislative. Hence, in the first of the above cases it was held that an Act of Assembly directing a court to grant a new trial was void. This overruled a heresy which had crept into the case of Braddee v. Brownfield, 2 W. & S. 271. Having the power to direct the county auditors to open the settlement of the late treasurer's accounts and readjust and resettle them, the legislature also possessed the right assuredly further to express, with binding effect, the purpose in view in opening the settlement; and it did this by requiring the auditors, with the approval of the county commissioners, to open the settlement of

[Burns *v.* Clarion County.]

his accounts "and resettle and equitably adjust the same." An equitable adjustment was the object.

It must be presumed the legislature, in passing this act, was made acquainted with the fact, that Burns had some claim which was not enforcable at law, and which, if established, might be an equitable ground of relief, and ought to be allowed by the accounting officers; therefore the direction to open and so resettle his accounts. That justice might be fully done on this basis more certainly, there is a provision for an appeal as in original cases of auditors' settlements.

The auditors opened the settlement, and closed it after a hearing, without affording any relief to Burns. If the case had ended here, we would be bound to infer that no equitable grounds for a change of the former settlement had been shown by him. But he appealed, and, on the trial of the appeal, we see what the equity he claimed was, and what we must suppose was shown to the legislature, and moved its action.

The case was tried on an issue ordered by the Court of Common Pleas of Clarion county, wherein the "county of Clarion was made plaintiff and James T. Burns, late treasurer of said county, defendant," who, under the plea of payment, was to give "all matters of defence in evidence, or matter entitling him to a balance in his favor."

On the trial of this issue, the defendant gave evidence to show that he was charged by the county with the amount of the tax duplicate of Porter township for the year 1861, and that, failing to collect the same in person on his annual visit to the township after notice, pursuant to the requirement of the 2d section of the Act of 1851, he did, after the lapse of the thirty days, after the 1st of August 1861, issue his warrant, accompanied by a schedule of unpaid taxes, against delinquents, to the constable of the township, as directed by the Act of Assembly; and that the constable proceeded to collect the same, and in the end, became a defaulter to the amount of $651.69, which sum he was utterly unable to recover by reason of his insolvency and that of both of his sureties; that under these circumstances, "and in order to get rid of the debts," as he said, he paid the amount of the duplicate as settled and charged against him in the report of the auditors, out of his own pocket, to his successor in office, Mr. Barr, and it went into the treasury of the county.

As he had no control over the question of the sureties approved for the constable, and none in the selection of the constable himself, and as the loss of the amount of money mentioned resulted from their insolvency, the sureties having been approved by the Court of Quarter Sessions of the county, were equitable circumstances in the mind of the legislature, which ought, if shown, to be taken into consideration in the settlement of the accounts of this prompt

[Burns *v.* Clarion County.]

and efficient officer, and this was what was meant to be done in passing the act. Under such circumstances, we think, if they were established by competent proof, the defendant was entitled to the equity which the Act of Assembly recognised, and of which the title of the act is evidence, being an act entitled " An act for the relief of James Burns, former treasurer of Clarion county."

But the auditors did not regard the claim thus arising, or for some other reason, as equitable, and decided against the meditated relief. Then the case came to be tried on appeal. Here we think the court was bound to try the case on the equitable grounds intended should be administered by the auditors, and the issue was so framed as to admit of this fully. Trial on any other grounds would nullify the relief meditated. It would have been a mockery to have required the auditors to proceed and adjust equitably, and allow the court on the appeal to proceed on strict legal principles. The opening and readjusting were all to be done on equitable grounds, wherever done—either before the auditors or in court, on appeal, or the intention of the statute might be entirely set aside. The rule for the auditors was to be the rule for the court, as it was but part of the machinery in the settlement of these municipal accounts. Both tribunals were bound to act upon the equities of the defendant as intended by the act.

But the court on the appeal did not do so. It set up, or rather administered, the very doctrine which made the appeal for legislative interposition necessary. It defeated the legislative object in doing so. In controlling the county officers as the legislature might do in the particular of opening the accounts of the treasurer, and prescribing a rule for resettlement, it impliedly directed that the rule of law applicable to a case of voluntary payment should be waived. But it was insisted on, and admitted by the court, and in this we think there was error. It was a case in which the legislature might interpose to prescribe a rule, and it did so, and what it prescribed should have been followed out. But the court ruled that a voluntary payment by the defendant, into the treasury, of the deficit of the constable could not be recovered back from the county. As a rule of law nothing could be truer than this. But this was not the rule on which this case was designed by the legislature to be tried, as already said. It defeated the justice intended to be the rule in the defendant's case so to try it.

We think the appeal, therefore, should have been tried upon the equitable principles which moved the legislature, arising out of the facts of the case. If proved, and established and shown that the defendant was a loser by the officer of the township and his deficient sureties, in view of the legislative action referred to, we think this circumstance should have been regarded as calling

[Burns *v.* Clarion County.]

for the administration of equity to relieve him from the consequences thereof. This would be an equity in favor of the defendant if nothing inequitable were shown to set it aside; such as negligence in pursuing the principal and his sureties, if such pursuit might have resulted in recovering the deficiency, or any portion of it. The object of directing a readjustment of the accounts of the defendant by the auditors, and the allowance of an appeal, was to test whether his equitable claim for opening the former settlement stood clear of inequitable or illegal conduct on his part. This was the reason for submitting the whole matter to readjustment and settlement, instead of directing him to be reimbursed at once. If so, his equities should have been recognised. The court below should have tried the case on these equitable principles, and not have ruled the defendant out on a sharp and unbending rule of the common law. We have said enough, however, to disclose our opinion of the assignment of error, in this case. It is sustained, and the judgment must be reversed.

Judgment reversed, and *venire facias de novo* awarded.